ARMSTRONG, Judge.
Louisiana Power & Light Company (LP & L) appeals a judgment for $1,456.44 in favor of The Carriage House, a Louisiana Partnership (“Partnership”). Prior to October 7, 1981 the Partnership owned the Carriage House Apartments (“Apartments”). On October 7, 1981 the Partnership sold the Apartments to the Carriage Court Condominiums (“Condominiums”). Attached to the act of sale was a U.S. Department of Housing and Urban Development settlement statement which indicated that in the transaction the Partnership-seller was being credited for the amount of the utility deposits and the Condominiums-buyer was being debited for the amount of the utility deposits, essentially transferring the utility deposit from the Partnership to the Condominiums.
In 1983 Mrs. Janis Ekman, manager of the Partnership, became aware that LP & L would be sending out refund checks to its customers in conjunction with the settlement of a longstanding lawsuit against Texaco.
Mrs. Ekman contacted the attorney who had worked on the sale of the Apartments, *172 Randy Opotowsky, and requested that he write a letter to LP & L notifying them that the Partnership was to receive refund checks for the applicable period prior to October 7, 1981. Mr. Opotowsky notified LP & L by letter dated March 14, 1983 to send any refunds due to: The Carriage House, A Louisiana Partnership c/o Mrs. P.J. Ekman, 542 Crystal Street, New Orleans, Louisiana 70124.
On March 28, 1983 LP & L mailed the refund checks for the Apartments to: Wag-uespack Pratt Management Inc. (“Wagues-pack”) and “Carriage House Apartments, Carriage Court Condominiums, 3000 Magazine Street, Suite 300, New Orleans, LA, 70115. Those checks were endorsed by Pierre Villere, the president and general partner of Condominiums.
In February of 1985 the Partnership filed a petition against LP & L for money due in the amount of $2,144.12 claiming that LP & L had failed to pay the refunds to the Partnership. LP & L answered that petition and made a third party demand against Waguespack and the Condominiums for the full amount of the refunds. In answer to LP & L’s third party demand Waguespack admitted receiving checks in the amount of $687.72. Waguespack deposited those checks with the registry of the court.
A trial was held on December 11, 1985. At the start of the trial Waguespack was dismissed. Judgment was rendered on February 14, 1986 in favor of the Partnership and against LP & L in the amount of $1,456.44.[1] In addition judgment on the third party demand was rendered in favor of LP & L and against Condominiums in the amount of $1,456.44. LP & L appeals from that judgment.
LP & L argues that the trial court erred by admitting into evidence the March 14, 1983 letter written by Randy Opotowsky.
LP & L also claims that the trial court erred in finding in favor of the Partnership because the Partnership assigned the utility accounts to the Condominiums but that assignment is valid only between the Partnership and the Condominiums as notice of the transfer was never given to LP & L. Hence, LP & L should be exonerated from liability because it did not receive proper notice of the assignment of the accounts.
Finally, LP & L argues that the judgment is unfair because it forces LP & L to pay a debt twice.
Appellant claims that the trial court should not have admitted the copy of the March 14, 1983 letter from Opotowsky to LP & L because it is not the best evidence. “The best evidence rule requires that the originals must be produced absent proof that they could not be located following a diligent effort.” Calderon v. Johnson, 453 So.2d 615 (La.App. 1st Cir.1984). LP & L employees Kathleen McCabe and Peter Hebert testified that they could not locate the letter in the LP & L files. Clearly the original copy of the letter could not be introduced, hence the best evidence was the copy of the letter retained by Opotowsky. Appellant’s argument regarding admission of the letter into evidence lacks merit.
With regard to the assignment of the utility accounts, it is arguable whether the Partnership assigned the utility accounts to the Condominiums. However, even if there was such an assignment, on the basis of oral testimony, and the March 14, 1983 letter from Opotowsky to LP & L, the trial court could have concluded that LP & L had sufficient notice of the assignment and yet failed to heed that notice when it sent out the refunds. The trial court did not err in making that finding.
Finally, LP & L’s argument that it must pay twice is without merit. The trial court awarded judgment on the third party demand for LP & L and against Condominiums. In order to recover any overpayment LP & L must simply execute judgment against Condominiums.
*173 For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. The difference in the amount demanded by the Partnership, $2,144.12, and the amount awarded in the final judgment by the court $1,456.44, occurs because in that judgment the trial court did not award to the Partnership the $687.72 deposited in the registry of the court by Waguespack.